CASANUEVA, Judge.
Jose Guadalupe Walle — thirteen years old when he committed numerous nonho-micide offenses in Hillsborough County— appeals his sentences, contending they violate the Eighth Amendment’s prohibition of cruel and unusual punishment. Following convictions for eighteen offenses, the trial judge imposed sentences totaling sixty-five years of imprisonment. The trial judge also ordered the sixty-five-year terms to run consecutively to previously imposed concurrent sentences totaling twenty-seven years’ imprisonment. Three months earlier, a different trial judge in a different judicial circuit had imposed the latter sentences in an unrelated case for crimes that Mr. Walle had committed two weeks before the crimes for which he was sentenced in this case. Mr. Walle claims that his resulting imprisonment for ninety-two years is the functional equivalent of a life sentence without the possibility of release. He argues that such a scheme violates the Supreme Court’s ruling in Graham v. Florida, — U.S.-, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). We affirm.
Since we heard oral argument in this case, the Supreme Court has released Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), and further discussed Graham. We will comment briefly on Miller as well as apply Graham to Mr. Walle’s case.
Mr. Walle’s Sentence
Mr. Walle pleaded guilty to eighteen offenses committed in Hillsborough County: two counts of armed kidnapping, eleven counts of armed sexual battery with a deadly weapon, one count of armed burglary of a structure, one count of grand theft motor vehicle, one count of attempted armed robbery with a firearm, one count of grand theft in the third degree, and one count of carjacking with a deadly weapon. The trial judge sentenced him to sixty-five years each on the armed kidnapping, armed sexual battery with a deadly weapon, and carjacking with a deadly weapon counts; to fifteen years each on the armed burglary of a structure and attempted robbery with a firearm counts; and to five years each on the grand theft of a motor vehicle and grand theft in the third degree counts. All counts were to run concurrent to each other but consecutive to the concurrent sentences totaling twenty-seven years previously imposed in Pinellas County for armed sexual battery, two counts of kidnapping, and three counts of armed robbery.

Graham v. Florida

In Graham, — U.S. -, 130 S.Ct. 2011, 176 L.Ed.2d 825, the juvenile defendant committed the offenses of armed burglary with an assault or battery and at *969 tempted armed robbery. Pursuant to a plea agreement, the trial judge withheld adjudication and sentenced Mr. Graham to three years of probation on each count, concurrent. When Mr. Graham violated his probation, the trial judge revoked his probation, adjudicated him guilty, and sentenced him to the statutory maximum for each offense — life in prison and fifteen years in prison, respectively. Id. at 2018-20.
Mr. Graham filed a motion in the trial court arguing that his life sentence without possibility of parole was cruel and unusual punishment proscribed by the Eighth Amendment.[1] The trial judge did not rule on the motion within sixty days and it was deemed denied. Id. at 2020. The First District affirmed the sentence on direct appeal and the Florida Supreme Court subsequently denied review. See Graham v. State, 982 So.2d 43 (Fla. 1st DCA 2008), review denied, 990 So.2d 1058 (Fla.2008).
The United States Supreme Court granted certiorari review. It recognized that the case “concern[ed] only those juvenile offenders sentenced to life without parole solely for a nonhomicide offense.” Graham, 180 S.Ct. at 2023. It then examined existing case law, looking at different classifications of proportionality issues raised in Eighth Amendment cases, to determine the best course of review. The Court explained:
In the first classification the Court considers all of the circumstances of the case to determine whether the sentence is unconstitutionally excessive....
[[Image here]]
The second classification of cases has used categorical rules to define Eighth Amendment standards-The classification in turn consists of two subsets, one considering the nature of the offense, the other considering the characteristics of the offender. With respect to the nature of the offense, the Court has concluded that capital punishment is impermissible for nonhomicide crimes against individuals. In cases turning on the characteristics of the offender, the Court has adopted categorical rules prohibiting the death penalty for defendants who committed their crimes before the age of 18 or whose intellectual functioning is in a low range.
[[Image here]]
The present case involves an issue the Court has not considered previously: a categorical challenge to a term-of-years sentence. The approach in cases such as Harmelin [v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991),] and Ewing [v. California, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003),] is suited for considering a gross proportionality challenge to a particular defendant’s sentence, but here a sentencing practice itself is in question. This case implicates a particular type of sentence as it applies to an entire class of offenders who have committed a range of crimes. As a result, a threshold comparison between the severity of the penalty and the gravity of the crime does not advance the analysis. Here, in addressing the question presented, the appropriate analysis is the one used in cases that involved the categorical approach[.]
Id. at 2021-23 (citations omitted).
Applying the categorical approach to a class of offenders consisting of all juveniles, the court determined
*970 that for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole. This clear line is necessary to prevent the possibility that life without parole sentences will be imposed on juvenile nonhomicide offenders who are not sufficiently culpable to merit that punishment.
Id. at 2030. In closing, the Court held:
The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide. A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term.
Id. at 2034.

Miller v. Alabama

Although Miller, — U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407, is distinguishable from Mr. Walle’s case because it dealt with a homicide offense rather than a nonhomicide one, we look to it for its comments on Graham. In Miller, two fourteen-year-old defendants were each convicted of murder. The sentencing court had no discretion but to sentence each to life imprisonment without the possibility of parole. 132 S.Ct. at 2460. Concluding that the mandatory sentencing “scheme prevented] those meting out punishment from considering a juvenile’s ‘lessened culpability[1] and greater ‘capacity for change,’ ” the Supreme Court held “that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment’s prohibition on ‘cruel and unusual punishments.’ ” Id.
The Court reiterated that the protection afforded by the Eighth Amendment’s prohibition of cruel and unusual punishment is “ ‘the right not to be subjected to excessive sanctions.’ ” Id. at 2463 (quoting Roper v. Simmons, 543 U.S. 551, 560, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005)). Accordingly, the Court explained that justice requires that punishment for a crime must be graduated and proportional because “ ‘[t]he concept of proportionality is central to the Eighth Amendment.’ ” Id. (quoting Graham, 130 S.Ct. at 2021).
Miller’s language makes clear the Court’s objection to a mandatory sentencing structure that removes from the sentencing judge’s discretion all consideration of a youthful offender’s particular circumstances. Therefore, “imposition of a State’s most severe penalties on juvenile offenders cannot proceed as though they were not children.” Id. at 2466. To do otherwise would “contravene[ ] Graham’s ... foundational principle.” Id. Any mitigating qualities found in a youthful offender must be considered. Thus, the Court noted, in responding to the dissenters’ narrow view of Graham, that Miller retains a distinction from Graham: “Graham established one rule (a flat ban) for nonhomicide offenses, while [Miller] set[s] out a different one (individualized sentencing) for homicide offenses.” Id. at 2466 n. 6.
Graham Is Not Controlling
The Supreme Court itself limited the scope and breadth of its decision in Graham by stating that its decision “concern[ed] only those juvenile offenders sentenced to life without parole solely for a nonhomicide offense.” Id. at 2023. From this statement we identify the four necessary analytical factors: (1) the offender was a juvenile when he committed his offense, (2) the sentence imposed applied to a singular nonhomicide offense, (3) the offender was “sentenced to life,” and (4) the sentence does not provide the offender with any possibility of release during his lifetime.
*971 The first factor of Graham is found in Mr. Walle’s case; both Mr. Walk and Mr. Graham were juveniles when they committed their respective offenses. But, while Mr. Graham was sentenced for a single conviction — armed burglary with assault or battery- — Mr. Walk was sentenced for multiple convictions. So the second factor is not satisfied. Further, while Mr. Graham received a life sentence, all of Mr. Walk’s sentences are for terms of years. Therefore, the third factor is also not satisfied. Lastly, none of the sentences in this case satisfies the fourth factor because there is nothing in the record to show that any of the sixty-five-year sentences will equate to life imprisonment for Mr. Walk.
In an attempt to evade the impact of these distinctions, Mr. Walk argues that Graham creates a “categorical rule barring life without parole for juvenile non-homicide offenders.” Essentially, he contends that the multiple concurrent sentences from this Hillsborough County case to be served consecutively to the concurrent multiple sentences from his Pinellas County case equate to the functional equivalent of an improper life sentence of ninety-seven years. For this proposition he relies upon the underpinnings of the Graham decision in which the Supreme Court utilized many societal considerations. For example, the Court reviewed statistics throughout the country and determined that sentencing child offenders to life in prison is “exceedingly rare” and that a “ ‘national consensus has developed against it.’ ” Id. at 2026 (quoting Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002)). It relied on a similar consensus from the international community. It considered the nature of the developing juvenile brain and found that juvenile criminals are less likely to be beyond rehabilitation than their adult counterparts. Id. It also reviewed the penological justifications of retribution, deterrence, incapacitation, and rehabilitation for significant punishment and then considered them when applied to juvenile offenders. Id. at 2028-30.
But this court cannot expand the Supreme Court’s ruling beyond the limitations it set forth in its opinion, specifically its holding that Graham applies solely to a single sentence of life without parole. Even if we could consider expanding the scope of Graham, we would decline. We are limited to the information contained within the record and to the arguments raised below. See State v. Stang, 41 So.3d 206, 206 (Fla.2010) (Lewis, J., concurring) (“It is a well established principle of law that appellate review is limited to the record on appeal.”). The limited record before this court does not contain the vast amounts of information regarding societal values, penological theories, or psychological effects that the Supreme Court had at its disposal.
Other Florida Courts
Two other Florida courts have weighed in on somewhat similar cases but have come to opposing results. In Floyd v. State, 87 So.3d 45 (Fla. 1st DCA 2012), the juvenile defendant eventually ended up with two consecutive forty-year prison sentences for two counts of armed robbery in the same case. The First District reversed the sentences, holding that they were the “functional equivalent of a life without parole sentence and will not provide [the defendant] with a meaningful or realistic opportunity to obtain release.” Id. at 47. The court encouraged the legislature to apply the Supreme Court’s opinion in Graham to clarify the uncertainty in this area of law. Id.
In Henry v. State, 82 So.3d 1084 (Fla. 5th DCA 2012), the juvenile defendant received consecutive sentences that totaled *972 ninety years in prison for several counts that arose from a single criminal episode. The Fifth District affirmed, determining that the strict language of Graham did not apply to aggregate term-of-years sentences. The court’s discussion of the question is similar to this court’s thought process on the issue:
If we conclude that Graham does not apply to aggregate term-of-years sentences, our path is clear. If, on the other hand, under the notion that a term-of-years sentence can be a de facto life sentence that violates the limitations of the Eighth Amendment, Graham offers no direction whatsoever. At what number of years would the Eighth Amendment become implicated in the sentencing of a juvenile: twenty, thirty, forty, fifty, some lesser or greater number? Would gain time be taken into account? Could the number vary from offender to offender based on race, gender, socioeconomic class or other criteria? Does the number of crimes matter? There is language in the Graham majority opinion that suggests that no matter the number of offenses or victims or type of crime, a juvenile may not receive a sentence that will cause him to spend his entire life incarcerated without a chance for rehabilitation, in which case it would make no logical difference whether the sentence is “life” or 107 years. Without any tools to work with, however, we can only apply Graham as it is written. If the Supreme Court has more in mind, it will have to say what that is. We conclude that [the defendant’s] aggregate term-of-years sentence is not invalid under the Eighth Amendment and affirm the decision below.
Id. at 1089 (footnotes omitted).
The Fifth District’s comments and concerns are all too familiar. Indeed, the case before this court raises additional questions: What if the aggregate sentences are from different cases? From different circuits? From different jurisdictions? If from different jurisdictions, which jurisdiction must modify its sentence or sentences to avoid constitutional infirmity?
Miller Is Not Controlling
Justice Kagan clearly set out the holding of Miller in the opinion’s opening paragraph: “We therefore hold that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment’s prohibition on ‘cruel and unusual punishments.’” 182 S.Ct. at 2460. Later, the opinion concludes, in a shorter passage: “We therefore hold that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders.” Id. at 2469. As Justice Breyer noted in his concurring opinion, “ ‘compared to adults, juveniles have a lack of maturity and an underdeveloped sense of responsibility; they are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure; and their characters are not as well formed.’ ” Id. at 2475 (Breyer, J., concurring) (quoting Graham, 180 S.Ct. at 2026).
Assuming for the sake of argument that Mr. Walle’s consecutive sentences will have him in prison for life without possibility of parole, we are still faced with the problem of sentences imposed by two separate trial courts for two separate instances of criminal conduct in two separate counties. Mr. Walle’s sixty-five-year sentence for heinous crimes committed in Hillsborough County in one episode is not a life sentence without possibility of parole. And neither is his twenty-seven-year sentence for his Pinellas County crimes. Instead, the sentences imposed were each for a specified term of years, albeit for an *973 extraordinary length because of the consecutive requirement. Further, pursuant to Florida law, after serving eighty-five percent of the sentence, Mr. Walle may qualify for a lessening of his sentence. See § 921.002(l)(e), Fla. Stat. (2008) (providing that parole is not applied to defendants sentenced under the Criminal Punishment Code, that sentences in Florida reflect the length of actual time to be served, shortened only by the application of incentive and meritorious gain time, and that defendants must serve no less than eighty-five percent of their term of imprisonment). Although, again, his consecutive sentences are of extremely long duration, release is not absolutely barred.
The five-member majority in Miller observed that the ban on cruel and unusual punishment in the Eighth Amendment “flows from the basic ‘precept of justice that punishment for crime should be graduated and proportioned’ to both the offender and the offense.” Id. at 2468 (quoting Roper, 548 U.S. at 560, 125 S.Ct. 1183). Here, the sentence imposed is graduated and proportional. Each criminal offense is classified by degree and the allowable punishment is determined by the severity of the singular offense. That is, the greater the severity of the crime, the greater the allowable punishment. Mr. Walle was sentenced not for one crime but for many. Two of which, sexual battery, were egregiously committed. The distinction from Graham and Miller here is that a large number of significant crimes resulted in severe sentences of lengthy incarceration.
We conclude that the expressed holding of either Graham or Miller is not violated by the sentences imposed upon Mr. Walle. We recognize that the Supreme Court’s constitutional prism of “ ‘the evolving standards of decency that mark the progress of a maturing society,’ ” Miller, 132 S.Ct. at 2463 (quoting Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)), may well result in a subsequent expansion of the Graham and Miller precedents. If so, it is within the Court’s authority to make that pronouncement. For now, the Eighth Amendment’s proscriptive reach does not constitutionally extend far enough to encompass Mr. Walle’s sentence.
Conclusion
Like the Fifth District in Henry, we conclude that we must apply Graham as written and as it was discussed in Miller. If the Supreme Court intended to extend the constitutional rule so as to apply to other sentencing scenarios, such as Mr. Walle’s, it should expand its holding accordingly. As the law stands today, we affirm the sentences on appeal.
To the extent that the holding in Adams v. State, — So.3d -, 2012 WL 3193932 (Fla. 1st DCA 2012), would apply to the facts of this case — in which Mr. Walle’s sentences arose from different jurisdictions and addressed separate criminal episodes — we certify conflict with Adams.
Affirmed; conflict certified.
WHATLEY and KHOUZAM, JJ„ Concur.

. Because Florida has abolished its parole system, Mr. Graham’s life sentence, he argued, guaranteed that he would die in prison unless he were granted executive clemency. Graham, 130 S.Ct. at 2020.