IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | ) | No. 71723-5-I |
|---|---|---|
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| BRIAN KEITH RONQUILLO, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: October 26, 2015 |
| | ) | |

BECKER, J. — At issue is a sentence of 51.3 years imposed for murder and other violent crimes the offender committed in a gang-motivated drive-by shooting when he was 16 years old. We reverse and remand for resentencing because the trial court erroneously concluded there was no legal basis for an exceptional sentence. This is a de facto life sentence governed by Miller v. Alabama.[1] Under our sentencing statutes and Miller, the diminished culpability of youth may serve as a mitigating factor. The court may also consider whether running three sentences consecutively produced a total sentence that is clearly excessive.

---

[1] ___ U.S. ___, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

FACTS

This case arises from the resentencing of appellant Brian Ronquillo for crimes he committed in 1994. Ronquillo was 16 years old at the time. Riding in a car with other gang members, he fired at least six shots at a group of students who were standing in front of Ballard High School. He missed two intended targets, but one of his shots killed innocent bystander Melissa Fernandes. Another student was injured by a bullet fragment.

Ronquillo was initially charged in juvenile court. The State initiated decline proceedings. The court determined that Ronquillo would be tried as an adult, concluding that his "maturity and sophistication weighed heavily in favor of decline" and the juvenile corrections system, which could not keep him past age 21, would not have sufficient time to rehabilitate him if he were convicted. State v. Ronquillo, noted at 89 Wn. App. 1037, 1998 WL 87641, at *3, review denied, 136 Wn.2d 1018 (1998).[2]

Ronquillo was tried with two codefendants. Ronquillo, 1998 WL 87641, at *1 n.1. A jury convicted him on four counts: one count of first degree murder, two counts of attempted first degree murder, and one count of second degree assault while armed with a firearm. The trial judge sentenced Ronquillo to the bottom of the standard range for each count. This produced a sentence of 621 months: 261 months for the murder and 180 months for each of the attempted murders, all to be served consecutively, with a concurrent sentence of 45 months for the assault. The consecutive aspect of the sentence was an application of

---

[2] See also decline hearing transcript, Clerk's Papers 374-452 at 415, 449.

what is known as the multiple offense policy. Sentences must run consecutively rather than concurrently when a person "is convicted of two or more serious violent offenses arising from separate and distinct criminal conduct." RCW 9.94A.589(1)(b), former RCW 9.94A.400 (1)(b) (2001).

Ronquillo's defense counsel Anthony Savage had argued that such a long sentence for a teenager was "morally wrong and legally unnecessary." He asked the court to impose an exceptional sentence by running the sentences concurrently. Savage argued that the operation of the multiple offense policy "results in a presumptive sentence that is clearly excessive." The request for a concurrent sentence was rejected, and Ronquillo was sentenced to 51.75 years in prison.

This court affirmed Ronquillo's conviction on direct appeal. Ronquillo, noted at 89 Wn. App. 1037. Three years later, Ronquillo returned to this court with a personal restraint petition claiming, among other things, that the trial court erred by concluding it was required to impose consecutive sentences. Ronquillo's petition was denied. In re Pers. Restraint of Ronquillo, noted at 109 Wn. App. 1025, 2001 WL 1516938, at *8.

In 2012, this court held that the statute setting forth the multiple offense policy, RCW 9.94A.589(1)(b), is ambiguous where two or more serious violent offenses arguably have the same seriousness level. State v. Breaux, 167 Wn. App. 166, 273 P.3d 447 (2012). Because this holding applied to Ronquillo's sentence, he again sought relief from his sentence on the ground that it was based on an incorrect calculation of his offender score. The State conceded, and

3

this court agreed, that Ronquillo was entitled to a remand for resentencing. In re Pers. Restraint of Ronquillo, noted at 176 Wn. App. 1011, 2013 WL 4607710, at *2.

The correct calculation of Ronquillo's offender score under Breaux would reduce his standard range sentence by only 5.25 months if everything else that went into the determination of the sentence remained the same. But the trial court had discretion to reconsider the sentence as a whole. State v. Graham, 178 Wn. App. 580, 586, 314 P.3d 1148 (2013), reversed on other grounds, State v. Graham, 181 Wn.2d 878, 337 P.3d 319 (2014). Ronquillo renewed his request for an exceptional sentence, and the court exercised its discretion to hear his argument. Ronquillo requested that his sentence be reduced to 320 months.

Ronquillo presented two alternative grounds for an exceptional sentence. First, he argued that youth alone can be a mitigating factor. As he recognized, this argument was not readily reconcilable with Washington statutes that govern the sentencing of persons convicted of felonies. Generally, a trial court must impose a sentence within the standard range. State v. Law, 154 Wn.2d 85, 94, 110 P.3d 717 (2005). The court has discretion to depart from the standard range either upward or downward. But this discretion may be exercised only if: (1) the asserted aggravating or mitigating factor is not one necessarily considered by the legislature in establishing the standard sentence range, and (2) it is sufficiently substantial and compelling to distinguish the crime in question from others in the same category. Law, 154 Wn.2d at 95. A factor is sufficiently substantial and compelling to justify departure only if it relates "directly to the crime or the

defendant's culpability for the crime committed." Law, 154 Wn.2d at 95. At the time of Ronquillo's resentencing, a defendant's youthfulness was not, by itself, a mitigating factor that could justify a downward departure. Law, 154 Wn.2d at 97-98; State v. Ha'mim, 132 Wn.2d 834, 847, 940 P.2d 633 (1997).

In recent years, the law governing the sentencing of juveniles has been significantly informed and in some respects unequivocally altered by the Eighth Amendment jurisprudence of the United States Supreme Court. Ronquillo asserted that his sentence of more than 51 years, "a near-life sentence," could not be reconciled with the reasoning of Miller v. Alabama, ___ U.S. ___, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), and its predecessors, Roper v. Simmons, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), and Graham v. Florida, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). In Roper and Graham v. Florida, the Court "adopted categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty." Miller, 132 S. Ct. at 2463. The first two of these cases held that children may not be subjected to capital punishment, and children who have committed nonhomicide offenses may not be subjected to life without the possibility of parole. Miller, 132 S. Ct. at 2463-64. The third case, Miller, holds that "mandatory life-without-parole sentences for juveniles violate the Eighth Amendment." Miller, 132 S. Ct. at 2464. Miller "does not categorically bar a penalty for a class of offenders or type of crime," but it does mandate that "a sentencer follow a certain process—considering an offender's youth and

5

attendant circumstances—before imposing a particular penalty." Miller, 132 S. Ct. at 2471.

Roper and Graham v. Florida established that juvenile offenders "are constitutionally different from adults for purposes of sentencing." Miller, 132 S. Ct. at 2464. The constitutional difference arises from a juvenile's lack of maturity, underdeveloped sense of responsibility, greater vulnerability to negative outside influences, including peer pressure, and the less fixed nature of the juvenile's character traits. Miller, 132 S. Ct. at 2464. Because juveniles have diminished culpability and greater prospects for reform, they are less deserving of the most severe punishments. Miller, 132 S. Ct. at 2464.

With Miller as a backdrop, Ronquillo argued that his youth at the time of the crime should be considered as a mitigating factor that would permit a departure from the strict application of the adult sentencing statutes. Ronquillo's sentencing memorandum described stressors in his family and school background that may have contributed to his gang involvement. It was accompanied by evidence that he has matured and made significant progress in rehabilitating himself through education and employment while in prison.

As an alternative ground for a reduced sentence, Ronquillo invoked the statute that permits a downward departure from the standard range if "the operation of the multiple offense policy of RCW 9.94A.589 results in a presumptive sentence that is clearly excessive." RCW 9.94A.535(1)(g).

At resentencing on March 21, 2014, the court concluded that Miller had no application in Ronquillo's case. In Miller, the two petitioners were convicted of

6

murder and sentenced to a mandatory term of life without parole. The Supreme

Court held that the Eighth Amendment "forbids a sentencing scheme that

mandates life in prison without possibility of parole for juvenile offenders." Miller,

132 S. Ct. at 2469. Because Ronquillo was not facing a mandatory term of life

without parole, the court concluded Miller did not supply a constitutional basis

compelling consideration of Ronquillo's youth as a mitigating factor. Accordingly,

the court looked only to Washington's sentencing statutes and determined that

under Law and Ha'mim, age alone cannot be a lawful mitigating factor in a felony

sentence. The court also concluded state sentencing law did not permit a finding

that Ronquillo's sentence was "clearly excessive."

> I appreciate the presentation on brain research. I find the science incredibly compelling. We certainly know much more about juveniles' brain development today than we did in 1994. And the research does tell us that juveniles' brains have not—usually have not, developed fully at age 16 and that impulsivity, irresponsibility, and vulnerability to peer pressure can be the product of neurological immaturity. It thus provides a very strong basis for the legislature to revisit current laws relating to the punishment of juvenile offenders.
>
> But this Court has concluded that ultimately what is the appropriate use of that juvenile research in criminal sentencing is a decision for the legislature to make and not one this Court can make.
>
> . . . .
>
> [Ronquillo's] post-conviction behavior is, as the State points out, not related to the crime he committed in 1994 and thus not something that I can legally turn to when imposing a sentence. As I said earlier, this is not in question of what I personally believe is a good sentence for a 16-year-old.
>
> If the law were different, I might be making a different decision. But I do feel that because of the law, I am constrained by how I rule today. For these reasons, I deny the request for an exceptional sentence.[3]

---

[3] Verbatim Report of Proceedings (Mar. 21, 2014) at 63-65.

7

Having rejected both bases offered by Ronquillo for an exceptional sentence, the court resentenced him to 615.75 months in prison. This was the same sentence as before, minus 5.25 months to correct for the Breaux error.

Ronquillo appeals. He contends that he is eligible for an exceptional sentence both under the Eighth Amendment as interpreted by Miller and because running his sentences consecutively makes his total sentence "clearly excessive" under RCW 9.94A.535(1)(g).

Whether a particular factor can justify an exceptional sentence is a question of law, which we review de novo. State v. O'Dell, No. 90337-9, 2015 WL 4760476, at *4 (Wash. Aug. 13, 2015).

### MILLER APPLIES TO DE FACTO LIFE SENTENCES

The State asks us to affirm the sentence and hold that Miller does not apply to a term-of-years sentence.

A sentence of 51.3 years is not necessarily a life sentence for a 16-year-old, but it is a very severe sentence. A question that has emerged is whether Miller's mandates "apply not only to mandatory life sentences without parole, but also to the practical equivalent of life-without-parole sentences." State v. Ragland, 836 N.W.2d 107, 119 (Iowa 2013).

Under the Eighth Amendment, the "imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children." Miller, 132 S. Ct. at 2466. The Eighth Amendment requires courts to consider a juvenile's chronological age "and its hallmark features—among them,

immaturity, impetuosity, and failure to appreciate risks and consequences." Miller, 132 S. Ct. at 2468.

In a persuasive opinion by the Iowa Supreme Court, the issue was whether a 52.5-year aggregate prison term imposed upon a juvenile for second degree murder and first degree robbery triggered Miller-type protections. State v. Null, 836 N.W.2d 41, 71-75 (Iowa 2013). The court did not regard the juvenile's "potential future release in his or her late sixties after a half century of incarceration" sufficient to escape the rationales of Graham or Miller. Null, 836 N.W.2d at 71. The court concluded that "Miller's principles are fully applicable to a lengthy term-of-years sentence" where the juvenile offender would otherwise face "the prospect of geriatric release." Null, 836 N.W.2d at 71. See also Casiano v. Comm'r of Correction, 317 Conn. 52, 72-80, 115 A.3d 1031 (2015) (imposition of a 50-year sentence without the possibility of parole on a juvenile offender was subject to the sentencing procedures set forth in Miller).

Ronquillo's sentence contemplates that he will remain in prison until the age of 68. This is a de facto life sentence. It assesses Ronquillo as virtually irredeemable. This is inconsistent with the teachings of Miller and its predecessors. Before imposing a term-of-years sentence that is the functional equivalent of a life sentence for crimes committed when the offender was a juvenile, the court must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." Miller, 132 S. Ct. at 2469. The trial court erred in concluding that only a literally mandatory life sentence falls within the ambit of Miller.

MILLER APPLIES TO AGGREGATE SENTENCES

The State emphasizes that Ronquillo is serving four separate sentences for crimes against four different victims, not a single lengthy sentence for a single conviction. According to the State, the Eighth Amendment is not implicated by separate sentences for separate crimes. For this proposition, the State relies on State v. Kasic, 228 Ariz. 228, 265 P.3d 410 (App. 2011); Walle v. State, 99 So. 3d 967 (Fla. Dist. Ct. App. 2012); and Bunch v. Smith, 685 F.3d 546 (6th Cir. 2012), cert. denied, 133 S. Ct. 1996 (2013).

The State's cases do not persuasively show that Eighth Amendment analysis does not apply to aggregate or consecutive sentencing of juveniles. In Kasic, a case that is both pre-Miller and factually dissimilar to Ronquillo's, the offender was sentenced to 139.75 years on 32 counts relating to a 1-year spree of arsons, most of them committed after he turned 18. Kasic, 228 Ariz. at 229-31. The court concluded the sentences were not categorically barred under Graham. Kasic, 228 Ariz. at 232-33. In Walle, the Florida Court of Appeal interpreted Graham and Miller narrowly and in doing so relied on another Court of Appeal opinion that has since been called into question by the Florida Supreme Court. Walle, 99 So. 3d at 971, citing Henry v. State, 82 So. 3d 1084 (Fla. Dist. Ct. App. 2012), decision quashed by Henry v. State, ___ So. 3d___, 2015 WL 1239696 (2015). Bunch, a habeas matter, is unhelpful because of the restricted standard of review. Bunch, 685 F.3d at 550 (Graham did not "clearly establish" that consecutive, fixed-term sentences for juveniles are

10

unconstitutional when they amount to "the practical equivalent of life without parole").

In Miller, one of the petitioners, Kuntrell Jackson, was convicted of felony murder *and* aggravated robbery. Miller, 132 S. Ct. at 2461. The Supreme Court reversed his mandatory life sentence with no indication that it should be treated differently on remand than a mandatory life sentence for a single crime. Since Miller, the United States Supreme Court in several cases involving aggregate crimes has granted certiorari, vacated sentences of life without parole, and remanded for further consideration in light of Miller. Blackwell v. California, ___ U.S. ___, 133 S. Ct. 837, 837, 184 L. Ed. 2d 646 (2013); Mauricio v. California, ___ U.S. ___, 133 S. Ct. 524, 524, 184 L. Ed. 2d 335 (2012); Bear Cloud v. Wyoming, ___ U.S. ___, 133 S. Ct. 183, 183-84, 184 L. Ed. 2d 5 (2012); and Whiteside v. Arkansas, ___ U.S. ___, 133 S. Ct. 65, 66, 183 L. Ed. 2d 708 (2012). On remand in Bear Cloud, the Wyoming Supreme Court held that an individualized sentencing hearing was required under Miller, not only when the sentence is life without parole, but also when aggregate sentences result in the functional equivalent of life without parole. Bear Cloud v. State, 2014 WY 133, 334 P.3d 132, 141-44 (Wyo. 2014); see also Null, 836 N.W.2d at 73 ("we agree with appellate courts that have concluded the imposition of an aggregate sentence does not remove the case from the ambit of Miller's principles.") Viewing these more recent authorities as persuasive, we conclude that the aggregate nature of Ronquillo's 51.3-year sentence does not protect it from a Miller challenge.

11

## THE "MILLER FIX" DOES NOT MAKE RESENTENCING UNNECESSARY

The State also argues that Ronquillo's sentence need not be reversed because a new statute known as the "Miller fix" provides a possibility of early release. The legislature enacted the statute in March 2014 with the intention of bringing Washington's sentencing framework into conformity with Miller.[4] See In re McNeil, 181 Wn.2d 582, 588-89, 334 P.3d 548 (2014) (summarizing the new sentencing guidelines for aggravated first degree murder committed by juvenile offenders). See also Nick Straley, Miller's Promise: Re-evaluating Extreme Criminal Sentences for Children, 89 Wash. L. Rev. 963, 993-96 (2014) (summarizing the new statute). The new statute provides that "any person convicted of one or more crimes committed prior to the person's eighteenth birthday may petition the indeterminate sentence review board for early release after serving no less than twenty years of total confinement." RCW 9.94A.730(1). Early release after 20 years is presumptive in such cases subject to conditions the board may see fit to impose, unless the board determines that even with conditions, "it is more likely than not that the person will commit new criminal law violations if released." RCW 9.94A.730(3).[5]

---

[4] Laws of 2014, ch. 130, effective June 1, 2014.

[5] In the same section, a person who commits another crime after age 18 is disqualified from seeking relief under RCW 9.94A.730(1). Ronquillo may not be eligible for early release under the Miller fix because he has a conviction for custodial assault arising from an incident that occurred not long after he went to prison. See State v. Ronquillo, noted at 99 Wn. App. 1069, 2000 WL 557902, review denied, 142 Wn.2d 1005 (2000).

12

This is not an appeal from a proceeding under RCW 9.94A.730(1). Ronquillo's situation is unusual because the Breaux error brought him back to the trial court for a post-Miller resentencing in a way not contemplated by the Miller fix. At resentencing, Ronquillo was able to argue that under Miller, his sentence of more than 50 years was unconstitutional and should be replaced with an exceptional sentence downward. The resentencing that occurred was not governed by the new statute, which had not yet gone into effect. Therefore, the State is not arguing that Ronquillo's sentence should be affirmed as a correct application of the Miller fix. Rather, the State is arguing that the existence of a new statutory avenue for early release means that Ronquillo's sentence can be affirmed because it "is not among those prohibited by Miller."

The distinction is illustrated by an analogous case not cited by the parties. Ragland, 836 N.W.2d at 110. The juvenile offender in Ragland was serving a mandatory term of life without parole for a first degree murder committed in 1986. Ragland, 836 N.W.2d at 110. After Miller was decided, the governor of Iowa was concerned about the prospect that offenders serving life sentences for murders committed as juveniles might be able to obtain substantially shorter sentences by seeking resentencing under Miller. The governor attempted to forestall that outcome by commuting 38 juvenile sentences of life without parole to term-of-years sentences. Ragland's sentence was commuted to 60 years without the possibility of parole. Ragland, though technically no longer serving a mandatory life sentence, sought resentencing under Miller. The State opposed the request for resentencing, taking the position that the commutation by the governor made

13

the sentence that Ragland was serving "no longer illegal." Ragland, 836 N.W.2d at 113. The trial court, however, granted Ragland's request by resentencing him to life in prison with the possibility of parole after 25 years, making him immediately eligible for parole. The Iowa Supreme Court rejected the State's argument and affirmed. The court stated that the commutation "did not affect the mandatory nature of the sentence or cure the absence of a process of individualized sentencing considerations mandated under Miller. Miller protects youth at the time of sentencing." Ragland, 836 N.W.2d at 119.

Ragland is persuasive, and we apply its reasoning here. Ronquillo's sentence of 51.3 years is not a constitutional sentence because the trial court erroneously concluded it could not apply Miller. The Miller fix does not correct the error. The error must be corrected in the trial court. We leave it to the trial court to determine what significance, if any, should be given to the potential of early release under the new statute.

## YOUTH RELATES TO A JUVENILE OFFENDER'S CULPABILITY

One of the State's concerns in this appeal is that opening the door for Ronquillo to get an exceptional sentence based on his youth will undermine the integrity of the Sentencing Reform Act. As noted above, the Act has been interpreted consistently as disallowing a defendant's personal characteristics from serving as a basis for a sentence outside the standard range. Until recently, age was viewed narrowly as only a personal characteristic. In the leading case of Ha'mim, a defendant unsuccessfully requested an exceptional sentence downward for a robbery conviction on the basis that she was just 18 years old at

14

the time of the crime. The State argued that the factors that can mitigate sentences are limited to two types: where the facts of the crime itself are less serious than typical for that crime, or where the defendant is less culpable because of outside influences on the defendant's judgment. Ha'mim, 132 Wn.2d at 846. On that basis, the court held that "age alone" could not be a substantial and compelling reason justifying an exceptional sentence. Ha'mim, 132 Wn.2d at 846. Youthfulness could be considered, but only if relevant to the recognized mitigating factor of impaired capacity to tell right from wrong—and then only if there was evidence of such impaired capacity. Ha'mim, 132 Wn.2d at 846.

At Ronquillo's resentencing, the trial court relied heavily on Ha'mim as the basis for refusing his request for an exceptional sentence. "I cannot rely on Mr. Ronquillo's age and the juvenile brain science to impose an exceptional sentence unless there's a demonstration that he lacked the neurological development to— at the time of his crime such that he did not understand right from wrong or that it impaired his ability to conform his conduct to the law. And reluctantly, the court concludes that that showing has not been made."[6]

A recent opinion by our Supreme Court has significantly revised the interpretation of Ha'mim relied on by the trial court. O'Dell, 2015 WL 4760476. In O'Dell, the appellant confronted the court with an argument that Ha'mim should be overruled in light of Miller. The court did not overrule Ha'mim and did not directly apply Miller to the case. In fact, the court explicitly adhered to the two-part test cited in Ha'mim that determines whether a departure from the

---

[6] Verbatim Report of Proceedings (Mar. 21, 2014) at 64.

15

standard range is permissible under the Sentencing Reform Act. But in place of Ha'mim's limitations on the consideration that may be given to a defendant's youthfulness, the court concluded—in light of the studies underlying Miller, Roper, and Graham v. Florida—that youth *can* satisfy the two-part test. Because the trial court did not "meaningfully consider youth as a possible mitigating factor" in O'Dell's case, the court remanded for a new sentencing hearing. O'Dell, 2015 WL 4760476, at *4.

The first part of the two-part test is whether the asserted mitigating factor was necessarily considered by the legislature when it established the standard sentence range for the crime in question. Ha'mim, 132 Wn.2d at 840. In O'Dell, the court held that while the legislature has determined that all defendants 18 or over "*in general*" are equally culpable for equivalent crimes, the legislature could not have considered "particular vulnerabilities—for example, impulsivity, poor judgment, and susceptibility to outside influences—of specific individuals." O'Dell, 2015 WL 4760476, at *5. In addition, the legislature did not have the benefit of the relatively recent psychological and neurological studies discussed in Miller. "These studies reveal fundamental differences between adolescent and mature brains in the areas of risk and consequence assessment, impulse control, tendency toward antisocial behaviors, and susceptibility to peer pressure." O'Dell, 2015 WL 4760476, at *6 (footnotes omitted). And it is "precisely these differences that might justify a trial court's finding that youth diminished a defendant's culpability." O'Dell, 2015 WL 4760476, at *6. In O'Dell, these observations were applied to an adult defendant who was barely over the

16

age of 18 when his crime was committed. They must necessarily apply even more forcefully to juvenile offenders.

Moreover, Ronquillo was tried as an adult, not as a juvenile. The decline statute, RCW 13.04.030, is not part of the Sentencing Reform Act. Adult criminal jurisdiction is not inevitable for a juvenile charged as Ronquillo was. This is a further reason to doubt that the legislature necessarily considered that juvenile offenders would have their sentences determined under the adult sentencing provisions that produced Ronquillo's sentence. See Graham v. Florida, 130 S. Ct. at 2025 (decline or transfer statutes tell us nothing about the judgments States have made regarding the appropriate punishment for such youthful offenders); Miller, 132 S. Ct. at 2474-75.

The second part of the two-part test is whether the asserted mitigating factor is "sufficiently substantial and compelling to distinguish the crime in question from others in the same category." Ha'mim, 132 Wn.2d at 840. With this part of the test in mind, the O'Dell court critiqued and revised Ha'mim's reasoning:

> Having embraced this reasoning—that it is "absurd" to believe that youth could mitigate culpability—this court went on to explain that youth alone could not be a nonstatutory mitigating factor under the SRA because "[t]he age of the defendant *does not relate to the crime* or the previous record of the defendant."
> When our court made that sweeping conclusion, it did not have the benefit of the studies underlying Miller, Roper, and Graham—studies that establish a clear connection between youth and decreased moral culpability for criminal conduct. And as the United States Supreme Court recognized in Roper, this connection may persist well past an individual's 18th birthday "[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18 [just as] some under 18 have already attained a level of maturity some adults will never reach."

17

> Today, we do have the benefit of those advances in the scientific literature. Thus, we now know that age may well mitigate a defendant's culpability, even if that defendant is over the age of 18. It remains true that age is not a per se mitigating factor automatically entitling every youthful defendant to an exceptional sentence. In this respect, we adhere to our holding in Ha'mim, 132 Wash.2d at 847, 940 P.2d 633. But, in light of what we know today about adolescents' cognitive and emotional development, we conclude that youth may, in fact, "'relate to [a defendant's] crime,'" id. at 847, 940 P.2d 633 (quoting RCW 9.94A.340); that it is far more likely to diminish a defendant's culpability than this court implied in Ha'mim; and that youth can, therefore, amount to a substantial and compelling factor, in particular cases, justifying a sentence below the standard range.
>
> For these reasons, a trial court must be allowed to consider youth as a mitigating factor when imposing a sentence on an offender like O'Dell, who committed his offense just a few days after he turned 18. To the extent that this court's reasoning in Ha'mim is inconsistent, we disavow that reasoning.

O'Dell, 2015 WL 4760476, at *7 (alterations in original) (footnote and citations omitted).

Following O'Dell, we conclude it does not compromise the fundamental principles of our statutory felony sentencing regime to hold that Miller is relevant to Ronquillo's request for an exceptional sentence. The trial court erroneously believed Ronquillo's age could not be considered as a possible mitigating factor, whereas we now know from O'Dell that it can be. As in O'Dell, we remand for a new sentencing hearing. O'Dell, 2015 WL 4760476, at *5, *8. At that hearing the trial court will consider, in light of Miller and O'Dell, whether youth diminished Ronquillo's culpability. See O'Dell, 2015 WL 4760476, at *7.

ARGUABLY, RONQUILLO'S SENTENCE WAS "CLEARLY EXCESSIVE"

As a second basis for requesting an exceptional sentence, Ronquillo invoked the statutory mitigating factor that may be considered when the

18

operation of the multiple offense policy of RCW 9.94A.589 "results in a presumptive sentence that is clearly excessive." RCW 9.94A.535(1)(g).

At the time of Ronquillo's resentencing, the trial court found his request was barred by this court's decision in State v. Graham, which held that mitigation for a clearly excessive aggregate sentence is allowed only for nonserious violent offenses. Ronquillo committed serious violent offenses. But this court's decision was reversed, and there is no longer a bar to imposing concurrent standard range sentences for serious violent offenses. State v. Graham, 181 Wn.2d at 886-87. In fact, a "clearly excessive" sentence may be reduced either by lessening the individual sentences or by imposing concurrent sentences or both. State v. Graham, 181 Wn.2d at 885-86. This recent decision by our Supreme Court is another reason why Ronquillo is entitled to consideration of his request for an exceptional sentence.

As directed by the plain language of RCW 9.94A.535(1)(g), a trial court must look to the purposes of the Sentencing Reform Act as expressed in RCW 9.94A.010 to determine whether mitigation of a consecutive sentence is appropriate in a particular case. State v. Graham, 181 Wn.2d at 886-87. Those purposes are as follows:

> (1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;
> (2) Promote respect for the law by providing punishment which is just;
> (3) Be commensurate with the punishment imposed on others committing similar offenses;
> (4) Protect the public;
> (5) Offer the offender an opportunity to improve himself or herself;

19

> (6) Make frugal use of the state's and local governments'
> resources; and
> (7) Reduce the risk of reoffending by offenders in the
> community.

RCW 9.94A.010. "Sentencing judges should examine each of these policies

when imposing an exceptional sentence under .535(1)(g)." State v. Graham, 181

Wn.2d at 887.

Here, these purposes should be examined in light of Miller in the same

manner that the exceptional sentencing framework in O'Dell was examined in

light of Miller. In that light, many if not all of the seven statutory purposes will

point toward a mitigated sentence. On remand, the trial court shall let Miller

inform and illuminate its consideration of whether Ronquillo's presumptive

aggregate sentence for multiple offenses is clearly excessive in light of the

purposes of the Sentencing Reform Act.

The sentence is reversed and remanded for further proceedings not

inconsistent with this opinion.[7]

---

[7] After oral argument in this case, and contemporaneously with our Supreme Court's opinion in O'Dell, Division Three of this court issued an opinion affirming an 85-year aggregate sentence imposed at resentencing of an offender who was 14 years old when he committed four murders. State v. Ramos, No. 32027-8-III, 2015 WL 4760496 (Wash. Ct. App. Aug. 13, 2015). Unlike here, the trial court in Ramos acknowledged its discretion to: (1) adopt a mitigated sentence in light of Miller, and (2) let the separate sentences on each count run concurrently. Because of this difference, the issues in Ramos are not the same as here and we conclude Ramos does not indicate that Ronquillo's sentence should be affirmed. To the extent Ramos might be interpreted as reasoning that Miller does not apply in cases of nonlife sentences or aggregate sentences, we respectfully disagree.

No. 71723-5-I/21

WE CONCUR:

Becker, J.

Spearmon, C.J.

Schindler, J.

2015 OCT 26 AM 9:48
COURT OF APPEALS
STATE OF WASHINGTON