# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  51409-5-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| TIMOTHY E. HAAG, | |
| Appellant. | |

GLASGOW, J. — In 1995, a jury found Timothy Haag guilty of aggravated first degree murder for the death of seven-year-old Rachel Dillard, Haag's next door neighbor.  Haag committed the crime when he was 17 years old.  The trial court imposed a life sentence without the possibility of early release.  In 2018, the trial court conducted a *Miller*[1] resentencing hearing as required under RCW 10.95.030 and RCW 10.95.035, after which it sentenced Haag to a minimum term of 46 years and a maximum term of life.  Under this sentence, Haag would first be eligible for release at age 63.

Haag appeals from his sentence, asserting that the trial court's sentencing decision failed to comply with RCW 10.95.030 and the constitutional requirements of *Miller*.  He also contends that the imposed 46-month minimum term was the functional equivalent of a life sentence

---

[1] *Miller v. Alabama*, 567 U.S. 460, 487, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

without a meaningful opportunity for release in violation of the Eighth Amendment of the United

States Constitution and article I, section 14 of the Washington Constitution.  Finally, he argues

that the jury did not find facts to support the minimum sentence imposed on resentencing.

We hold that the trial court took into account the factors that *Miller* and the relevant

statutes required.  Haag has failed to show that his new sentence is the functional equivalent of a

life sentence.  His sentence was within the range that the legislature has set, so the jury was not

required to find facts to support his minimum sentence.  We therefore affirm.

FACTS

I. BACKGROUND

In 1994, Rachel Dillard went missing from her backyard while her family was preparing

to attend a barbeque.  Haag was at his home alone when Dillard went missing.  Later that day,

Haag gave police permission to search his house.  The police found Dillard's body under Haag's

bed, naked, ankles bound, and with a plastic bag over her head.  The State charged Haag with

aggravated first degree murder.

At trial, Haag admitted that he had strangled Dillard with his hands.  Haag then stopped

and retrieved a belt from his closet while Dillard cried on his bed.  Haag looped the belt around

Dillard's throat and pulled it tight.  Haag said that he choked Dillard with the belt for about three

to five minutes.  Haag then held Dillard underwater in his bathtub to make sure she was dead.

Haag explained that he put a plastic bag over Dillard's head because there was stuff coming out

of her mouth.  Testimony at trial established that this indicated she was likely still alive when

Haag put her in the bathtub.

The jury returned a verdict finding Haag guilty of first degree murder. The jury also returned a special verdict finding the aggravating circumstance that Haag committed the murder in the course of, in furtherance of, or in immediate flight from the crime of first degree kidnapping. The trial court sentenced Haag to life without the possibility of early release.

## II. RESENTENCING HEARING

While Haag was serving his life sentence, the United States Supreme Court issued its decision in *Miller*, which held that a mandatory life sentence without parole for an offender who was under 18 years old at the time of the offense was unconstitutional. 567 U.S. at 487. The Washington Legislature responded by adopting the "*Miller*-fix" in 2014. LAWS OF 2014, ch. 130, § 9(3)(b). The new statute amended RCW 10.95.030 to establish new guidelines for sentencing juveniles convicted of aggravated first degree murder. LAWS OF 2014, ch. 130; *see also In re Pers. Restraint of McNeil*, 181 Wn.2d 582, 588-89, 334 P.3d 548 (2014).

Under the new guidelines, sentencing courts are required to "take into account mitigating factors that account for the diminished culpability of youth" when setting the minimum term of confinement for juveniles convicted of aggravated first degree murder. RCW 10.95.030(3)(b). The Legislature also enacted RCW 10.95.035, which requires that juvenile offenders like Haag, who were sentenced prior to June 1, 2014, to life without the possibility of parole, be resentenced consistent with RCW 10.95.030.

In 2018, Haag was resentenced under RCW 10.95.030 and RCW 10.95.035. At his resentencing hearing, Haag presented the expert testimony of Dr. Marty Beyer, Ph.D. and Dr.

Ronald Roesch, Ph.D. Beyer and Roesch submitted reports detailing Haag's childhood history based on their interviews with Haag and Haag's family members.

According to Beyer's and Roesch's reports, Haag was the youngest of five children and had a happy childhood prior to his father leaving the family when Haag was around 5 years old. Haag's family struggled financially after his father left. Haag did not have many friends in school, and his peers often made fun of him because he was obese. Haag had a difficult relationship with his stepfather, who he described as a "jerk" and "totally self-absorbed." Clerk's Papers (CP) at 64. Haag's mother reported that Haag's stepfather was not physically abusive but that he emotionally abused Haag.

Beyer's and Roesch's reports describe Haag's close friendship with Dillard's older brother Alex Dillard.[2] Haag considered Alex to be his best friend and saw him nearly every day that they lived next door to each other. According to Haag, Alex's stepfather and older sister physically and emotionally abused Alex. Haag said that he was devastated and became enraged at Alex's family after Alex was removed from the home and placed in foster care. Haag described himself as "a closeted homosexual when he was an adolescent" and said that he had never had a romantic relationship or confided with anyone about his sexual orientation. CP at 87. Haag said that he was secretly attracted to Alex.

Roesch's report also describes Haag's conduct while in prison. Haag had only one major infraction, which occurred in 1997. Haag's prison counselor reported that Haag "is a compliant offender who is respectful to staff, has not been aggressive toward staff or other inmates, and . . .

---

[2] We refer to Alex Dillard by his first name for clarity.

has never presented any management problems at all during his confinement." CP at 88-89.

Haag has participated in programs and held several jobs while in prison.

Beyer testified that Haag was less emotionally mature as a teenager than other people at that age. Beyer opined that Haag had been unable to identify or express his emotions, which resulted in a "volcano of unexpressed feelings [that] came from trauma that he had experienced earlier in his life and . . . as a teenager." Verbatim Report of Proceedings (VRP) (Jan. 12, 2018) at 15-17, 20. Beyer concluded that Haag's past trauma and emotional immaturity manifested in a brief psychotic episode at the time he killed Dillard. Beyer further testified:

> I concluded that this tragedy was the result of an unplanned explosion of a volcano of feelings inside of [Haag]. He was not aware of the strength of those feelings or their complexities, nor did he anticipate the explosion.
> He had, for years, been accumulating feelings from trauma that he experienced from the abandonment by his father and from being picked on in elementary and middle school and from psychological maltreatment by his stepfather. In addition, as a teenager he was living with shame and fear about the rejection he would likely experience if anyone were to find out about his sexual orientation.
> The loss of his best friend overwhelmed his capacity to contain all of these feelings of grief, outrage, shame, and loneliness. He was an immature 17-year old, particularly emotionally immature, and could not give names to his feelings nor did he have anyone he could share his feelings with so they were stored up.
> And their explosion was unanticipated and completely out of character with this young person who did well in school, who had no delinquency indicators and no history of aggression.

VRP (Jan. 12, 2018) at 12-13. Beyer concluded that Haag would have been deemed an "extremely low risk for future re-offending" after he committed his offense based on his retrospective score on the Structured Assessment of Violence in Youth assessment tool. VRP (Jan. 12, 2018) at 36-37.

Roesch similarly testified that Haag would have been deemed a low risk for reoffending. Roesch also opined that Haag continued to have a low risk for reoffending as an adult, based on Haag's results on the HCR-20 assessment tool and other standardized risk assessment instruments. Roesch said that Haag did not currently have any serious mental health issues that would require treatment.

A video of defense counsel's interview with prison minister Kenneth Pearson was played at the resentencing hearing. Pearson stated that he had developed a friendship with Haag while working as the prison minister. Pearson described Haag as a "man of integrity" who tried to stay out of trouble while in prison and who was willing to help others. RP at 104. Several of Dillard's and Haag's family members also provided statements at the resentencing hearing.

The trial court issued its resentencing decision the following week. The court began its verbal ruling by extending its "deepest sympathies to the Dillard family and friends who have suffered indescribable pain and utter heartbreak for the murder of Miss Rachel." VRP (Jan. 19, 2018) at 16. The court recounted the facts underlying Haag's crime, noting that Dillard's death was "ferociously brutal and unrestrained and it was a multi-stage killing, not a single act of impulsivity." VRP (Jan. 19, 2018) at 18.

The trial court acknowledged that Haag had a decreased culpability for his offense because as a teenager, he "was in a stage where his rational thinking process was based more in the primitive amygdala versus the sophisticated frontal cortex, where fully-developed adult brains consider and make decisions." VRP (Jan. 19, 2018) at 19. The trial court noted:

6

> Indicative of a teenager's brain is impulsivity, lack of regulation when making judgments and decisions, failure to adequately—adequately assess long-term consequences of choices, and a compromised ability to properly weigh and perceive risk. I have nothing to dispute that Mr. Haag's brain development as a seventeen-year-old young man was any different than any other teen and as recognized by the higher courts.

VRP (Jan. 19, 2018) at 19-20. The trial court described Haag's childhood as a "mixed bag of positive and challenging circumstances, not unlike others." VRP (Jan. 19, 2018) at 20. Specifically, the court noted Haag's positive childhood circumstances in having a loving and nurturing mother, a strong academic performance in school, and participation in extracurricular activities, such as the marching band. The court also noted Haag's negative circumstances in having a father who had abandoned the family, having a stepfather who was emotionally abusive, being teased for his weight, living in poverty, and having to hide his sexual orientation. The trial court expressed concern that Haag had not engaged in any counseling to address the underlying issues leading to his crime.

The trial court commented that Haag has shown "significant change and growth while in prison," has not received an infraction in over 20 years, and has "reached a significant level of rehabilitation." VRP (Jan. 19, 2018) at 24-25. The court concluded that Haag "is not irretrievably depraved nor irreparably corrupt," and that he had expressed "sincere remorse and sorrow for his actions." VRP (Jan. 19, 2018) at 25. The court explained, however, that "rehabilitation is not the sole measure in sentencing" and that it must consider "the gravity of the wrong committed" when determining the severity of Haag's punishment. VRP (Jan. 19, 2018) at 25. Thereafter, the court issued its ruling, stating:

The Legislature states that in setting the minimum term the Court must take into account mitigating factors that account for the diminished capacity of youth and further requires the Court to take into account the age of the murderer, the murderer's childhood and life experiences, the degree of responsibility that the youth was capable of exercising, and the youth's chances for becoming rehabilitated.

I believe I have considered those factors in my comments above and the information that was presented to me last week at the sentencing hearing.

So the Court is faced with the daunting task of properly weighing a multiplicity of factors, which include a vile, cowardly, and particularly heinous multi-step strangulation and drowning of a defenseless, sixty-five pound little girl committed by a three hundred pound seventeen-year-old young man that resulted in a convict[ion] for aggravated murder in the first degree. I'm also to consider the then-youthful brain of Mr. Haag with diminished decision-making capacity, who simultaneously lived through some very difficult circumstances while still enjoying a supportive relationship and activities. And also, a man convicted of murder who has exhibited a stellar track record in prison and has been assessed as a low risk for violently re-offending.

In balancing these pieces of the puzzle, the *Miller* court and the statutory factors, and all the other factors that I mentioned earlier, the Court does now hereby impose a sentence—a minimum sentence of forty-six years in prison and a maximum of life in prison.

VRP (Jan. 19, 2018) at 26-27. Haag appeals.

ANALYSIS

I. PROPER REVIEW OF HAAG'S CLAIMS

As an initial matter, the State asserts that Haag was required to raise his claims in a personal restraint petition rather than in a direct appeal, but the State acknowledges that we may disregard this procedural defect and review the merits of Haag's appeal as a personal restraint petition. We agree that the proper method to seek review of a *Miller* resentencing decision is through a personal restraint petition.

RCW 10.95.035(3) provides: "The court's order setting a [new] minimum term is subject

to review to the same extent as a minimum term decision by the parole board before July 1, 1986." Before July 1, 1986, defendants could seek review of a parole board's minimum term decision only through a personal restraint petition. *See, e.g.*, *In re Pers. Restraint of Rolston*, 46 Wn. App. 622, 623, 732 P.2d 166 (1987). Therefore, the proper method to seek review of a resentencing decision under RCW 10.95.035 is through a personal restraint petition. Nevertheless, to facilitate review of Haag's resentencing claims on the merits, we disregard this procedural defect and review his appeal as a personal restraint petition. *State v. Bassett*, 198 Wn. App. 714, 721-22, 394 P.3d 430 (2017), *aff'd*, 192 Wn.2d 67, 428 P.3d 343 (2018).

When a petitioner has not had a prior opportunity for judicial review, the heightened standard for relief though a personal restraint petition does not apply. *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 299, 88 P.3d 390 (2004). Instead, the petitioner need only show that they are under restraint under RAP 16.4(b) and that the restraint is unlawful under RAP 16.4(c). *Id.*; RAP 16.4. Under RAP 16.4(c), restraint is unlawful if an offender's sentence was imposed in violation of the state or federal constitution or Washington law. RAP 16.4(c)(2).

Because Haag has had no prior opportunity for judicial review of the trial court's resentencing decision, to obtain relief he must meet only these requirements. Haag is restrained pursuant to the trial court's imposed sentence. RAP 16.4(b). Accordingly, we must determine whether Haag's restraint is unlawful.

Our Supreme Court has determined that, in the context of sentencing juveniles in compliance with *Miller*, "'sentencing courts must have complete discretion to consider mitigating circumstances associated with the youth of any juvenile defendant.'" *Bassett*, 192 Wn.2d at 81 (quoting *State v. Houston-Sconiers*, 188 Wn.2d 1, 21, 391 P.3d 409 (2017)). Thus,

9

even where we cannot say that "every reasonable judge would necessarily [have made] the same decisions as the [sentencing] court did . . . , we cannot reweigh the evidence on review" of a post-*Miller* resentencing. *State v. Ramos,* 187 Wn.2d 420, 453, 387 P.3d 650, *cert. denied*, 138 S. Ct. 467 (2017). We do not substitute our discretion for that of the resentencing court.

## II. COMPLIANCE WITH RCW 10.95.030 AND *MILLER*

Haag first contends that his restraint is unlawful because the trial court abused its discretion by failing to comply with the requirements of RCW 10.95.030 and *Miller* when setting his minimum term of confinement. We disagree.

Under RCW 10.95.030(3)(a)(ii), offenders who committed aggravated first degree murder when they were at least 16 years old but less than 18 years old are subject to an indeterminate sentence with a minimum term of no less than 25 years. When setting the minimum term, sentencing courts must comply with *Miller* by accounting for the offender's diminished culpability stemming from their youth. RCW 10.95.030(3)(b).

The United States Supreme Court held in *Miller* that mandatory life sentences without the possibility of parole violate the Eighth Amendment's prohibition on cruel and unusual punishment when imposed on an offender who committed their crime before the age of 18. 567 U.S. at 487. In so holding, the *Miller* Court recognized that "children are constitutionally different from adults for purposes of sentencing." *Id.* at 471. Juvenile offenders are "'less deserving of the most severe punishments'" because they "have diminished culpability and greater prospects for reform." *Id.* (quoting *Graham v. Florida*, 560 U.S. 48, 68, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010)). Juvenile offenders are less culpable than adults due in part to their

10

lack of maturity, underdeveloped sense of responsibility, impulsivity, heedless risk taking, and increased vulnerability to negative influences and outside pressures. *Id.*

In light of the diminished culpability of juvenile offenders, *Miller* requires sentencing courts to consider the "'mitigating qualities of youth'" before imposing a particular penalty. *Id.* at 476 (quoting *Johnson v. Texas*, 509 U.S. 350, 367, 113 S. Ct. 2658, 125 L. Ed. 2d 290 (1993)). When evaluating the mitigating qualities of youth the court must consider that

> "chronological age, 'immaturity,' 'impetuosity,' 'failure to appreciate risks and consequences,' the surrounding family and home environment, 'the circumstances of the homicide offense, including the extent of his participation in the conduct' and any pressures from friends or family affecting him, the inability to deal with police officers and prosecutors, incapacity to assist an attorney in his defense, and the possibility of rehabilitation."

*Bassett*, 198 Wn. App. at 725 (quoting *Miller*, 567 U.S. at 477).

In accordance with the *Miller* requirements, RCW 10.95.030(3)(b) provides that when setting the minimum term, the court must consider mitigating factors "that account for the diminished culpability of youth as provided in *Miller*." These factors include, but are not limited to, "the age of the individual, the youth's childhood and life experience, the degree of responsibility the youth was capable of exercising, and the youth's chances of becoming rehabilitated." RCW 10.95.030(3)(b).

Haag does not contend that the trial court failed to consider the mitigating qualities of youth or that it disregarded relevant mitigating evidence when resentencing him as required under RCW 10.95.030(3) and *Miller*. Instead, Haag contends that the trial court abused its discretion by failing to "meaningfully weigh" his diminished culpability and by applying principles of retribution that improperly focused on the circumstances of his crime. Br. of Appellant at 22.

11

Regarding Haag's claim that the trial court did not "meaningfully weigh" evidence of his diminished culpability, *Miller* resentencing courts have "complete discretion" when weighing mitigating factors related to the offender's youth. *Houston-Sconiers*, 188 Wn.2d at 21. Appellate courts cannot reweigh mitigating evidence when reviewing a trial court's *Miller* resentencing decision. *Ramos*, 187 Wn.2d at 453. In *Ramos*, our Supreme Court determined that the defendant could not show a *Miller* violation where the resentencing court considered the mitigation evidence, was aware of its sentencing authority, and reasonably considered the issues identified in *Miller* when imposing its sentence. *Id*.

Here, in its extensive verbal ruling, the trial court expressly considered Haag's mitigation evidence, was aware of its sentencing authority, and reasonably considered the factors identified in *Miller* and in RCW 10.95.030 when imposing its sentence. Because we lack authority to reweigh such evidence on review, Haag fails to show that he is unlawfully restrained on this basis.

Haag's claim that the trial court abused its discretion by focusing on the circumstances of his crime and by applying principles of retribution to its sentencing decision also fails. Although the *Miller* Court noted that "'the case for retribution is not as strong with a minor as with an adult'" in light of a minor's diminished culpability, nothing within the *Miller* opinion suggests that retributive principles are improper considerations when evaluating a juvenile offender's culpability for the purpose of imposing a sentence. 567 U.S. at 472 (quoting *Graham*, 560 U.S. at 71). To the contrary, because "'the retribution rationale' relates to an offender's

blameworthiness," the *Miller* Court recognized that "'the circumstances of the homicide offense, including the extent of [the juvenile offender's] participation in the conduct'" are relevant considerations when evaluating a juvenile offender's diminished culpability. *Id.* at 472, 477 (quoting *Graham*, 560 U.S. at 71). Because the trial court properly considered the circumstances of Haag's crime when weighing the mitigation evidence, and because *Miller* does not prohibit a trial court from considering what punishment is appropriate in light of the nature of the crime, Haag fails to demonstrate that he is unlawfully restrained on this basis.

### III. DE FACTO LIFE SENTENCE

Next, Haag contends that he is unlawfully restrained because the trial court's imposition of a 46-year minimum term of incarceration amounted to a de facto life sentence without a meaningful opportunity for release, which he asserts violates the Eighth Amendment and article I, section 14. Because Haag fails to demonstrate that his 46-year minimum term amounted to a de facto life sentence, we do not address whether a de facto life sentence is constitutionally prohibited.

In *Ramos*, our Supreme Court defined a de facto life sentence as "a total prison term exceeding the average human life-span." 187 Wn.2d at 434. Under the trial court's imposed 46-year minimum term, Haag will have an opportunity for release when he is 63 years old. Haag asserts, without any supporting evidence, that the average male lifespan is 78 years. Even by Haag's own assertion, his imposed minimum term does not constitute a de facto life sentence as defined in *Ramos*.

Haag argues that we should instead look to the average lifespan of someone who has been incarcerated. Haag cites to several studies that show the average life expectancy for certain incarcerated persons is less than the general population. But Haag provides no factual support that, apart from his incarceration, he shares the same characteristics as the subjects of these studies, and he provides no legal support for the proposition that the court should look to the average life expectancy of incarcerated people, which is not the standard that the Washington Supreme Court articulated in *Ramos*. 187 Wn.2d at 434 (considering "the average human life-span").

Haag relies on the Iowa Supreme Court's opinion in *State v. Null*, 836 N.W.2d 41 (2013), as persuasive authority that his 46-year minimum term constituted a de facto life sentence because the minimum term provided the possibility of only geriatric release. Because our Supreme Court defined a de facto life sentence in *Ramos*, Haag's reliance on *Null* is misplaced. Haag also relies on *State v. Ronquillo*, 190 Wn. App. 765, 361 P.3d 779 (2015) to support his claim that his 46-year minimum term constituted a de facto life sentence. In *Ronquillo*, Division One of this court determined that the juvenile offender's 51.3-year sentence providing for release at age 68 was a de facto life sentence. 190 Wn. App. at 768, 774-75. Again, Haag's reliance is misplaced because *Ronquillo* predated the *Ramos* opinion defining a de facto life sentence.

Because Haag fails to demonstrate that he has been subjected to a de facto life sentence, we do not reach whether such a sentence would violate the federal or state constitutions. *See State v. Hall*, 95 Wn.2d 536, 539, 627 P.2d 101 (1981) ("A reviewing court should not pass on

No. 51409-5-II

constitutional issues unless absolutely necessary to the determination of the case.")

## IV. JURY TRIAL RIGHT

Finally, Haag contends that his restraint is unlawful because the trial court's imposed sentence exceeded that authorized by the jury's verdict in violation of his constitutional jury trial and due process rights. We disagree.

The Sixth Amendment of the United States Constitution guarantees criminal defendants the right to an impartial jury. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Similarly, any fact triggering or increasing a mandatory minimum sentence must also be submitted to a jury and proven beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. 99, 112-13, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013).

Haag argues that RCW 10.95.030 is unconstitutional insofar as it permitted the trial court to impose a minimum term of incarceration based on judicial factfinding regarding the mitigating circumstances of youth. We disagree.

Haag's argument fails to recognize the distinction between facts that increase a *mandatory* minimum sentence and facts relied upon by a trial court to impose a sentence within a prescribed statutory range. Here, the prescribed statutory range for Haag's crime of aggravated

15

first degree murder was a minimum of "no less than twenty-five years" and a maximum of life.[3]

RCW 10.95.030(a)(ii). The trial court's factual findings with regard to the mitigating circumstances of youth did not increase the *mandatory* minimum sentence to which Haag was subjected for his aggravated first degree murder conviction, it remained at 25 years. Rather, the trial court's factual findings merely informed its discretion in sentencing Haag within the prescribed statutory range. The *Alleyne* Court clearly articulated this distinction and noted that its decision did not prohibit judicial fact finding in this context, stating:

> In holding that facts that increase mandatory minimum sentences must be submitted to the jury, we take care to note what our holding does not entail. Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment.

570 U.S. at 116.

Haag's imposed sentence did not violate his constitutional jury trial and due process rights, and he fails to show that he is unlawfully restrained on this basis. Accordingly, we affirm his sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW

---

[3] In *State v. Bassett*, 192 Wn.2d 67, 428 P.3d 343 (2018), our Supreme Court held that sentencing juvenile offenders to life imprisonment without the possibility of parole is unconstitutional under article I, section 14 of the Washington Constitution. Accordingly, Haag's prescribed sentencing range, within constitutional bounds, was a minimum term of no less than 25 years but less than a term of life, with some opportunity for release at the expiration of his minimum term and periodically thereafter.

No. 51409-5-II

2.06.040, it is so ordered.

_____
Glasgow, J.

We concur:

_____
Melnick, P.J.

_____
Sutton, J.

17